Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8348 | **DATE** | 11/22/2004 |
| **CASE TITLE** | Moirav Shaltiel vs. Fortis Insurance Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. For the reasons stated in this memorandum opinion and order, Shaltiel's motion for summary judgment is granted (12-1) while Fortis' motion is naturally denied. (11-1) And because neither party's submissions have addressed Shaltiel's added prayer for a recovery under 215 ILCS 5/155(1), this action is set for a next status hearing at 8:45 a.m. November 29, 2004 to discuss that remaining issue.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 2 3 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | rbf docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 11/22/2004 | |
| SN | courtroom deputy's initials | 2004 NOV 22 PM 12:24 | date mailed notice SN | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MOIRAV SHALTIEL, )
)
Plaintiff, )
)
v. ) No. 03 C 8348
)
FORTIS INSURANCE COMPANY, )
)
Defendant. )

DOCKETED
NOV 2 3 2004

MEMORANDUM OPINION AND ORDER

Moirav Shaltiel ("Shaltiel"), invoking federal jurisdiction on diversity of citizenship grounds, has sued Fortis Insurance Company ("Fortis") under the Declaratory Judgment Act, 28 U.S.C. §2201. Shaltiel seeks a ruling that under the terms of a medical insurance Master Group Policy ("Policy") issued by Fortis, it is obligated to provide benefits covering gastric bypass surgery that she ultimately underwent on March 8, 2004.

Shaltiel and Fortis have filed cross-motions under Fed. R. Civ. P. ("Rule") 56 for summary judgment as to Fortis' liability or nonliability under the Policy.[1] For the reasons stated in this memorandum opinion and order, Shaltiel's motion is granted, while Fortis' motion is naturally denied.

---

[1] This District Court's LR 56.1 ordinarily implements Rule 56 by requiring parties to submit evidentiary statements and responses to such statements, to highlight which facts are disputed and which are agreed upon. In lieu of such separate statements and responses, in this instance the parties entered into a joint statement of uncontested facts together with exhibits, respectively cited here as "J. St. ¶--" and "J. Ex." "S." and "F." designations are also respectively used to refer to all other documents submitted by Shaltiel and Fortis.

## Rule 56 Standards

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). Where as here cross-motions for summary judgment are involved, these principles require the court to take a dual perspective--one that this Court has frequently described as Janus-like. Here that problem does not exist, for the underlying facts are not in dispute -- instead the parties are at odds only about the meaning of an exclusionary provision in the Policy. Thus the issue is one of contract interpretation and is ripe for disposition at the summary judgment stage (Bechtold v. Physicians Health Plan of N. Ind., Inc., 19 F.3d 322, 325 (7th Cir. 1994)).

## Background

On September 1, 1996 Fortis issued Shaltiel a medical insurance certificate reflecting her coverage under the Policy (J. St. ¶10). Shaltiel retained the certificate and duly paid all premiums for the coverage afforded by the Policy (J. St. ¶12). As reflected in the Policy's benefits schedule, benefits were to be paid for "Covered Charges" (a defined term) incurred by Shaltiel while coverage was in force (J. Ex. 1). In relevant

part Covered Charges were defined as those charges for treatment determined by Fortis to be (1) medically necessary and (2) not listed in the stated "Exclusions" from benefits (id.).

On May 2, 2003[2] Dr. John C. Alverdy of the University of Chicago's Center for Surgical Treatment of Obesity sent a fax to Fortis seeking pre-authorization of benefits on behalf of Shaltiel "for a gastric restrictive procedure with gastric bypass for morbid obesity" (J. St. ¶14; J. Ex. 2). Dr. Alverdy's letter further specified that the medical co-morbidities associated with her morbid obesity included hypertension and obstructive sleep apnea (J. Ex. 2). Fortis' swift May 6 letter response declined benefits for the proposed surgery on the basis of a specific Exclusion from Policy coverage (J. Ex. 1):

> We will not pay benefits for any of the following:
>
>    \*   \*   \*
>
> Treatment of "quality of life" or "lifestyle" concerns including but not limited to: smoking cessation; obesity; hair loss; sexual function, dysfunction, inadequacy or desire; or cognitive enhancement.

That May 6 letter further advised Shaltiel of her right to appeal the benefit determination.

Shaltiel appealed the initial determination through her attorney Gerald Mullin ("Mullin") in a May 14 letter (J. St. ¶16)

---

[2] With just two exceptions, all other dates in this Background section also fell in 2003. So the 2003 year reference will be omitted hereafter.

that explained the proposed surgery was "neither primarily a lifestyle or cosmetic undertaking [but] rather an attempt to cure severe morbid obesity that is potentially life threatening" (J. Ex. 4). Fortis' June 2 letter response to Mullin repeated its denial of benefits based on the above-quoted Policy language and advised him of Shaltiel's right to file a first level grievance as to the adverse determination (J. St. ¶18).

Shaltiel did so through Mullin on July 22 (J. St. ¶19) with a written grievance that included the previous correspondence between the parties, a medical report from Dr. Alverdy reflecting his determination that Shaltiel was an appropriate candidate for the procedure and two medical journal articles regarding the proposed treatment (J. Ex. 6). On August 19 Fortis sent Mullin a letter stating that it had reviewed the information he sent but that it was unable to reverse its original decision that benefits were not available for Shaltiel's proposed gastrointestinal surgery (J. St. ¶20).

On October 13 Shaltiel (through Mullin) filed a second level grievance that included a letter from Dr. Ronald A. Feingold stating that Shaltiel was suffering from "marked exogenous obesity, hypertension and sleep apnea" and that she had been "advised for medical reasons to undergo gastric bypass surgery for treatment of her obesity" (J. St. ¶22; J. Ex. 9). Fortis' November 6 letter response stated that following a review by the

Fortis Health Grievance Panel it had been determined that benefits were not available for the proposed surgery because "[t]he certificate specifically excludes treatment of obesity" (J. St. ¶23; J. Ex. 10). Fortis' letter further said that all avenues in Fortis' internal grievance process had now been exhausted (id.).

Shaltiel underwent gastric bypass surgery on March 8, 2004 (J. St. ¶24). According to the report of an examination conducted by Dr. Feingold on June 28, 2004, since the surgery Shaltiel had lost 61 pounds, no longer had symptoms of sleep apnea and had normal blood pressure levels (J. St. ¶25).

### Shaltiel's Entitlement to Benefits

Because the Policy was executed and issued in Illinois, it is construed in accordance with Illinois law (Cross v. Zurich Gen. Accident & Liab. Ins. Co., 184 F.2d 609, 611 (7th Cir. 1950)). For that purpose the sole question to be decided here is whether Shaltiel's gastric bypass surgery fell within the earlier-quoted Exclusion. In that respect Shaltiel argues that the Exclusion language does not encompass gastric bypass surgery in her case, while Fortis contends that it excludes all treatment that addresses obesity, including gastric bypass surgery regardless of its purpose.

Contract construction under Illinois law involves the two-step inquiry set out in Lumpkin v. Envirodyne Indus., Inc., 933

F.2d 449, 456 (7th Cir. 1991). First the court looks to the language of the contract. If the plain language provides an unambiguous answer to the issue in dispute, the inquiry is over (id.). But if the contractual language is ambiguous as to that issue, the court must then go on to declare the contract's meaning (id.). And where as here the extrinsic evidence is undisputed, the interpretation of such an ambiguous contract remains a question of law for the court to decide (id.).

As to the first step, the words of an insurance contract are ambiguous if they are susceptible to more than one reasonable interpretation (State Farm Fire & Cas. Co. v. Moore, 103 Ill. App.3d 250, 256, 430 N.E.2d 641, 646 (2d Dist. 1981)). And in determining whether an ambiguity exists in an insurance contract, "the court should consider the subject matter of the contract, the facts surrounding its execution, the situation of the parties, and the predominate purpose of the contract which is to indemnify the insured" (id.).

Fortis devotes the bulk of its memoranda to the argument that an unambiguous exclusionary provision may be applied to deny coverage even when the treatment sought to be excluded is medically necessary. But that argument really begs the question, for Fortis' original memorandum devotes very little attention to establishing that the provision at issue is in fact unambiguous. Only in Fortis' response to Shaltiel's Rule 56 motion does it

attempt to do so, urging (F. R. Mem. 4) that there was no need to differentiate between a gastric bypass undertaken to treat medical conditions and one undertaken for appearance-related reasons, because gastric bypass surgery is performed "first and foremost, to address the condition of obesity itself, which is among the specific conditions for which benefits will not be paid." From that premise Fortis seeks to conclude that "any attempt to limit [the exclusion's] application or define its scope may only serve to create an ambiguity where none presently exists" (id.).

But that contention tellingly ignores the express language of the relevant Exclusion (as do both Fortis' memoranda--nowhere in those submissions, perhaps understandably given the nature of the contractual language, does Fortis recite the specific words of the provision that it contends is unambiguous). It will be recalled that the Exclusion is actually stated in terms of "[t]reatment of 'quality of life' or 'lifestyle' concerns," followed by such examples as treatment for hair loss and sexual inadequacy as well as obesity. As S. R. Mem. 6 perceptively observes, it is surely a reasonable reading of that provision that medically necessary surgery that deals with obesity, undertaken not to treat the patient's "quality of life" or "lifestyle" but rather to address serious medical co-morbidities associated with morbid obesity, is not excluded from coverage.

On the other side of the coin, it could perhaps be said that Fortis' counter-interpretation might also be viewed as reasonable (though it seems to turn the interpretive process on its head by trying to read the single word "obesity" as creating an absolute and sweeping prohibition, instead of looking at it in the context of the "quality of life" and "lifestyle" characterizations). But at step one of the required two-step analysis it is unnecessary to engage in a weighing process, for the initial ambiguity inquiry asks only whether the "quality of life" and "lifestyle" exclusion is susceptible to more than one reasonable interpretation. That inquiry gets an obvious and unequivocal "yes" answer, so that the exclusion is ambiguous at a minimum and must therefore be construed by this Court.

Ambiguous provisions in which an insurer seeks to limit its liability are read in the familiar contra proferentem mode: They are "construed most strongly against the insurer and in favor of the insured" (State Farm, 103 Ill.App.3d at 255, 430 N.E.2d at 646, citing Squire v. Economy Fire & Cas. Co., 69 Ill.2d 167, 179, 370 N.E.2d 1044, 1049 (1977) to the identical effect). Michael Nicholas, Inc. v. Royal Ins. Co., 321 Ill. App.3d 909, 914, 748 N.E.2d 786, 791 (2d Dist. 2001) identifies the two important considerations that support such a rule:

> (1) the intent of an insured in purchasing an insurance policy is to obtain coverage, and therefore any ambiguity jeopardizing coverage should be construed consistent with the insured's intent; and (2) the insurer is the drafter of

>     the policy and could have drafted the ambiguous provision
>     clearly and specifically.

Indeed, the very cases that Fortis advances in support of its position here actually cut against it, for they show how readily Fortis <u>could</u> <u>have</u> drafted a provision that would clearly exclude payment of benefits for gastric bypass surgery regardless of its purpose (as it did not in the Policy).

Thus the provision at issue in <u>Carr v. Gates Health Care Plan</u>, 195 F.3d 292, 296 (7th Cir. 1999) specifically excluded these two categories of medical services:

> 2. Cosmetic or surgical procedures [such as] any services performed in connection with the enlargement, reduction, implantation, or change in appearance of a portion of the body....
>
> 19. Gastric stapling or diversion from weight loss.

And in the recently decided <u>Manny v. Central States, S.E. & S.W. Areas Health & Welfare Pension Funds</u>, Dkt. No. 04-1797, 2004 WL 2382140 (7th Cir. Oct. 26), the policy at issue expressly excluded coverage for "[a]ny surgery primarily for obesity, including gastric bypass, gastric stapling, intestinal bypass...." Those provisions in <u>Carr</u> and <u>Manny</u> thus exhibited flat-out prohibitions of gastric stapling surgery (in <u>Manny</u> such surgery was "primarily for obesity," which might have posed a factual issue but for the sharply different standard referred to in the next paragraph of this opinion), wholly unlike the present "quality of life" or "lifestyle" exclusion followed by such

9

examples as treatment for obesity.

Moreover, besides the very different specificity of the exclusions involved in Carr and Manny, each was an ERISA case in which the court upheld a plan administrator's denial of coverage under the deferential "arbitrary and capricious" standard. In fact, integral to the decision in Manny is the court's statement of its limited role in that respect (2004 WL 2382140, at *3):

> When different clauses of a contract clash, creating an ambiguity, we have an interpretive task confided in this instance to the teamster plan's trustees. We cannot say that their interpretation is unreasonable.

Hence the court concluded its opinion by stating (id. at *5):

> But we are wandering from the issue, which is simply the reasonableness of the trustees' interpretation of the plan; it was reasonable, so our hands are tied.

By sharp contrast, Fortis' interpretation of the Policy is entitled to no such deference. Indeed, precisely the opposite is true: Because the provision is ambiguous, Illinois caselaw uniformly teaches that it is to be construed (by this Court, not by Fortis itself) most strongly against Fortis.

What has been said to this point dooms Fortis' rejection of coverage in this case. But oddly enough, Fortis itself supplies still another nail to drive into its own coffin by submitting the opinion in a South Dakota trial court case, Cain v. Fortis Ins. Co., as Exhibit C in supposed support of its motion for summary judgment. In that respect F. Mem. 9 misleadingly characterizes that case, in which it obtained a judgment in its favor as to its

10

rejection of a claim for coverage of gastric bypass surgery, as "virtually indistinguishable from the case at bar."

To the contrary, the decision in Cain leads the reader to wonder why Fortis' counsel cited it at all. Here is the language of the relevant policy exclusions in that case--exclusions set out in a very different policy that was also drafted by Fortis itself (F. Ex. C):

> Weight Control. You are not covered for any treatment or regimen, medical or surgical, for the purpose of controlling your weight or for the treatment of obesity.
>
> \*  \*  \*
>
> Weight Reduction Programs. You are not covered for weight reduction programs and supplies (including dietary supplements, foods, equipment, laboratory testing, examinations, and prescription drugs) whether or not weight reduction is medically appropriate.

Those exclusions clearly exclude benefits for gastric bypass surgery regardless of other effects that it may have. Fortis' use of such flat-out exclusions in another of its own policies, coupled with its failure to incorporate them into Shaltiel's Policy, provide added (and highly persuasive) evidence that an interpretation favoring coverage in Shaltiel's case should be adopted.

In short, the cases that Fortis cites support the proposition that an unambiguous provision that excludes coverage for medical or surgical treatment of obesity as such can properly be applied to exclude payment of benefits for gastric bypass

11

surgery, even where there is evidence that the surgery is also called for to address other health concerns. But the Policy Exclusion in this case is not unambiguous. Instead, because that Exclusion can reasonably be read (really an understatement) in the manner asserted by Shaltiel--as not barring payment of benefits for a gastric bypass surgery whose purpose is to address morbid obesity and the major medical co-morbidities associated with that condition--Illinois law demands that this Court adopt that interpretation.

## Conclusion

As a result of the parties' joint factual statement, there is no genuine issue of material fact. And because the Policy Exclusion at issue here is ambiguous (at a minimum) as applied to gastric bypass surgery, and because Illinois law demands that the ambiguity be construed most strongly in Shaltiel's favor, she is entitled to a declaratory judgment that Fortis is required by its Policy to pay benefits for her gastric bypass surgery. This Court so declares. And because neither party's submissions have addressed Shaltiel's added prayer for a recovery under 215 ILCS 5/155(1), this action is set for a next status hearing at 8:45 a.m. November 29, 2004 to discuss that remaining issue.

_____
Milton I. Shadur
Senior United States District Judge

Date: November 22, 2004

12